IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRANDON FRANK STRICKER,<br><br>Defendant. | CR 20–46–BLG–DLC<br><br><br><br>ORDER |

On December 27, 2022, Defendant Brandon Frank Stricker filed a pro se motion to reduce his 168-month sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 108.) His projected release date is February 20, 2033. *See* Federal Bureau of Prisons, *Inmate Locator*, http://www.bop.gov/inmateloc (last accessed April 10, 2024). On November 1, 2023, counsel was appointed to represent Stricker for purposes of this motion. (Doc. 123.) Appointed counsel filed an amended motion on March 1, 2024. (Doc. 134.) The government opposes the motion for compassionate release. (Doc. 137.)

## ANALYSIS

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons and the reduction: (1) takes into consideration the sentencing factors set

1

forth in 18 U.S.C. § 3553(a); (2) is warranted by "extraordinary and compelling reasons," or the defendant is at least 70 years old and has served at least 30 years in prison; and (3) is consistent with the applicable policy statements of the United States Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).  The Sentencing Commission's relevant policy statement adds that the Court may not reduce a term of imprisonment unless "the defendant is not a danger to the safety of any other person or to the community."  U.S. Sent'g Guidelines Manual § 1B1.13(a)(2) (U.S. Sent'g Comm'n 2023).[1]

Stricker argues that a reduction in his sentence is warranted because of his "medical conditions, in conjunction with the increased risk and harsher prison conditions created by the COVID-19 pandemic."  (Doc. 135 at 8.)  For the reasons discussed below, the Court denies the motion for compassionate release.

## I.    Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

---

[1] In November 2023, the United States Sentencing Commission adopted revisions to § 1B1.13 of the Sentencing Guidelines Manual, in part, moving the Commission's policy statements that were previously in commentary notes into the actual Guidelines text.  *See* United States Sentencing Commission, *2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)* 1–13 (April 27, 2023) (available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Stricker claims to have submitted a request for compassionate release to the Warden at FCI La Tuna, where he is currently incarcerated, on September 20, 2022, to which he received no response. (Docs. 135 at 3, 136-1.) The United States responds that there is no record of Stricker's request in the Bureau of Prison's records. (Doc. 137 at 6.) Thus, it is not clear that Stricker has exhausted his administrative remedies. Nonetheless, the Court will go on to address the remaining requirements under § 3582(c)(1)(A).

## II.   Extraordinary and Compelling Reasons

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason," including where the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" or "is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or [an] ongoing public health emergency . . . [and] such risk cannot be adequately mitigated in a timely manner." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(C), (D)(ii)–(iii) (U.S. Sent'g Comm'n 2023). The defendant may also "presents any other circumstance or combination of

circumstances that, when considered by themselves or together with any of the" examples provided by the Sentencing Commission, "are similar in gravity to" the examples provided. *Id.* § 1B1.13(b)(5).  However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* § 1B1.13(d).

Stricker states that he contracted COVID-19 in 2021 and that he continues to suffer a number of "long COVID" symptoms, including "excruciating pain," "vision and memory loss," and "diminished cognition." (Doc. 135 at 9.)  He also alleges that "COVID infections at FCI La Tuna are widespread," FCI La Tuna "will not mitigate the risks of severe medical complications he is currently experiencing," and "[h]e has not received any medical treatment for his long COVID." (*Id.* at 9–10.)  He argues that "his severe illness, frequent isolation, and irregular routines have resulted in a harsher and more punitive sentence than may have been intended by this Court when he was sentenced." (*Id.* at 10.)

Stricker's medical records confirm that he contacted COVID-19 in August 2021.  (Doc. 136-2 at 200.)  However, Stricker also has a number of underlying, long-term health conditions that his treating physician believes are likely the source of many of his alleged "long COVID" symptoms.  (*See* Doc. 139 at 4.)  As a whole, the record indicates that the BOP is providing adequate treatment for Stricker's conditions and there is no indication that he is facing a particular vulnerability that cannot be, or has not already been, mitigated by treatment while

4

in BOP custody.  Stricker has been prescribed Acyclovir for oral herpes, Albuterol for allergic rhinitis and asthma, Naproxen for an "unspecified neck injury," and Tamsulosin HCl for "[unspecified] symptoms and signs involving the genitourinary system." (Doc. 136-2 at 199.)  In recent visits, his treating physician has noted that his medications are "working well," (*id.* at 197), his chest X-ray results show no cardio-pulmonary pathology, (*id.* at 196), and that Stricker "did very well with long term and short term memory recall," (*id.* at 200).

In light of the evidence before the Court, the Court finds that Stricker's claims regarding his medical treatment and general complaints regarding the handling of COVID-19 at FCI La Tuna are not extraordinary or compelling.

### III.  Section 3553(a) Factors

Although unnecessary in light of the above findings, the Court will also address the federal sentencing objectives set forth in 18 U.S.C. § 3553(a).  These factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care.  *See* 18 U.S.C. § 3553(a)(1), (2).  Courts may also consider the advisory guideline range and the need to "avoid unwarranted

sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

The Court finds that § 3553(a)'s sentencing factors, in particular the nature and circumstances of the offense, Stricker's history and characteristics, and the need to provide just punishment, weigh against the requested relief. Stricker's offense conduct is very serious: he coerced and manipulated multiple minor girls into exploitative sexual activity, including the production of child sexual abuse material and non-consensual sexual acts and contact. (Doc. 78 ¶¶ 9–36.) This conduct took place over the course of multiple years and Stricker utilized several social media platforms and fake names in order to avoid detection. (*Id.*) Stricker was found to be in possession of several digital storage devices containing child sexual abuse material as well as several videos of him having sex with a horse. (*Id.* ¶ 31.) After he was confronted by law enforcement, he repeatedly contacted one of his victims, threatening her and attempting to bribe her. (*Id.* ¶ 35.)

Stricker was initially indicted on four counts of coercion and enticement, one count of receipt of child pornography, one count of attempted sex trafficking of a minor, one count of animal crushing, and one count of witness tampering. (*Id.* ¶ 1.) A superseding indictment added two additional counts, attempted production of child pornography and possession of child pornography. (*Id.* ¶ 4.) Stricker ultimately plead guilty to just one count of receipt of child pornography. (*Id.* ¶ 6.)

At sentencing, the Court acknowledged that "the manipulation and predatory conduct that is revealed in this case by clear and convincing evidence is, if not some of the worst, is most likely the worst [the undersigned has] seen." (Doc. 116 at 183.) Stricker was ultimately sentenced to a custodial sentence of 168 months, a downward variance from the guideline range of 210 to 240 months based on the binding plea agreement for variance entered into by the parties and accepted by the Court. (Docs. 84 at 2, 76 at 2–3.) To date, Stricker has served less than 20% of this sentence. The Court also notes that while Stricker has engaged in numerous educational courses in custody, he does not appear to have engaged in any sex offender treatment. (Doc. 135-3.)

The Court therefore concludes that the § 3353(a) sentencing factors weigh against the requested relief.

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release (Docs. 108, 134) is DENIED.

DATED this 10th day of April, 2024.

_____
Dana L. Christensen, District Judge
United States District Court